## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **RICARDO A. SMITH,** : | |
|     **Plaintiff** : | |
| : | |
| v. : | C.A. No. 24- |
| : | |
| **BROWN UNIVERSITY IN PROVIDENCE IN** : | **Jury Trial Demanded** |
| **THE STATE OF RHODE ISLAND AND** : | |
| **PROVIDENCE PLANTATIONS, alias,** : | |
|     **Defendant** : | |

## COMPLAINT

### I. Introduction

This action is brought by the Plaintiff, Ricardo Smith, against his former employer, Defendant Brown University in Providence in the State of Rhode Island and Providence Plantations, alias, seeking compensatory, punitive, and liquidated damages, as well as attorneys' fees, litigation expenses and other equitable relief, arising out of unlawful discrimination in employment the Plaintiff has suffered on account of his disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), the Civil Rights of People with Disabilities Act, R.I. Gen. Laws § 42-87-1, *et seq*. ("CRPD"), the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, *et seq*. ("FEPA"), and the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws § 42-112-1, *et seq*. ("RICRA").

### II. Parties

1. Plaintiff, Ricardo A. Smith, at all times relevant to this action, was a resident of the City of Providence, Providence County, State of Rhode Island.

2. Defendant Brown University, alias, ("Defendant") is a non-profit corporation duly organized and incorporated under the laws of the State of Rhode Island, with a principal office located at 1 Prospect Street, Providence, RI 02912.

### III. Jurisdiction

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1367, 2201, and 2202.

### IV. Venue

4. Venue is proper in this Court insofar as the Defendant is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V. Exhaustion of Administrative Remedies

5. On or about July 5, 2022, Plaintiff filed a charge alleging disability discrimination with the Rhode Island Commission for Human Rights ("RICHR").

6. The charge was subsequently co-filed with the United States Equal Employment Opportunity Commission ("EEOC").

7. On or about June 18, 2024, Plaintiff was issued a Notice of Right to Sue by the RICHR.

8. Plaintiff was subsequently issued a Notice of Right to Sue by the EEOC.

9. Accordingly, insofar as he has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, the Plaintiff has timely instituted suit in the within matter.

### V. Material Facts

#### *Employment Background*

10. Plaintiff was an exemplary employee of Defendant for twenty-three years.

11. Most recently he served as Network Manager within the Center for Alcohol & Addiction Studies in the School of Public Health.

12. Plaintiff's work duties in this role were IT support and supervision, including trouble shooting and assisting in the set-up of equipment and supporting, collaborating, and supervising other IT staff and creating and maintaining systems and processes for IT staff to work together.

13. Plaintiff could and did perform essentially all his duties remotely via zoom, other remote software, including remotely accessing computers, and/or by phone, including trouble shooting and assisting in the set-up of equipment.

14. Indeed, performing work remotely, including remotely accessing computers and walking people through issues over the phone, is customary and standard practice in the IT support industry.

15. The few tasks that absolutely had to be performed onsite he either did himself during off-hours when no one was at the workplace, or he assigned to other available IT staff in the School of Public Health, all of whom he worked together with collaboratively to ensure quality IT service to the School of Public Health.

16. As Plaintiff was a supervisor, not just an IT technician, such management and organization of collaboration and sharing of resources with other IT workers at the School of Public Health was part of his job.

17. During the first year and a half of the COVID-19 pandemic, Plaintiff worked remotely and occasionally came onsite during off-hours to complete work in the manner described above.

18. This remote work along with occasional off-hour visits (hereinafter referred to as "remote work accommodation") allowed Plaintiff to perform all the essential duties of his job not just satisfactorily, but with distinction, earning him both formal and informal praise and recognition.

19. His work performance prompted one former interim Dean and now current Director of one of Brown's medical school-related divisions to describe him as an "IT guru."

20. During the early phases of the COVID-19 pandemic he was nominated for the Bear Day Excellence Award for his efforts dealing with the challenges of the pandemic.

### *Plaintiff's Disability*

21. Plaintiff suffers from, a permanent and life-threatening heart condition known as Catecholaminergic Polymorphic Ventricular Tachycardia ("CPVT") which was diagnosed in 2006.

22. Individuals with this condition, such as Plaintiff, are at a substantially elevated risk of experiencing sudden cardiac arrest.

23. Among the triggers for sudden cardiac arrest due to this condition is oxygen desaturation, or diminished oxygen.

24. As a consequence of his disability, Plaintiff has had 6 heart surgeries from 2007 to 2017, and he has coded ("died") a total of nine (9) times due to disability-related cardiac arrests.

25. Wearing a mask for extended periods, during periods of physical exertion, and/or emotional excitement increases Plaintiff's risk of oxygen desaturation and thus the chance of experiencing sudden and potentially deadly cardiac arrest.

26. Nevertheless, factors like sleep, emotional state, and a myriad of environmental factors create an unpredictability and randomness as to how long Plaintiff could safely wear a mask at any given time, making the circumstances that could create a life-threatening oxygen desaturation episode unpredictable.

27. As such, Plaintiff's disability means he really cannot safely wear a mask except, perhaps, for extremely brief periods, and never for extended periods or during instances of physical exertion and/or emotional excitement or in situations where he was not free to take the mask off immediately if he felt an attack coming on.

28. Moreover, insofar as oxygen deficiency is a primary consequence of a COVID-19 infection, the Plaintiff was particularly at risk of serious injury or death were he to contract COVID-19; yet another reason why he needed to minimize if not totally avoid any in-person exposure.

*Defendant's Awareness of Plaintiff's Disability and Required Accommodation*

29. On June 4, 2020, Plaintiff requested accommodation for this disability, asking to work from home as much as possible and not to be forced to wear a mask for extended periods of time.

30. As part of this request E. Kevin Heist, M.D., ("Dr. Heist") a doctor of Cardiology and Cardiac Electrophysiology at Massachusetts General Hospital and one of Plaintiff's healthcare provided information regarding Plaintiff's disability.

31. Dr. Heist explained that Plaintiff needed to minimize his need to wear a mask and should be allowed to work from home whenever feasible.

32. The same information was provided again on July 6, 2021.

### *Defendant's Initial Accommodation of Plaintiff's Disability*

33. After receiving the information about his disability and request for accommodation the first time, Defendant allowed Plaintiff to continue working remotely while occasionally coming in during off-hours as he had been since the early days of the pandemic.

34. This accommodation allowed Plaintiff to minimize wearing a mask and avoid exposing himself to life-threatening situations.

35. Plaintiff worked in this manner for over a year-and-a-half.

36. During this period, he not only satisfactorily performed all the essential duties of his job, but he did so in an exemplary manner as evidenced by both the formal and informal praise and recognition he received.

37. At all relevant times, Plaintiff was able to complete his job duties with the remote work reasonable accommodation without any undue burden to Defendant.

### *Refusal to Continue Providing Reasonable Accommodation and Termination*

38. Despite Plaintiff performing all the essential duties of his job fully and admirably for over a year-and-a-half with the remote work accommodation, Defendant revoked and refused to continue the remote work accommodation that had been in place for the past year-and-a-half.

39. Whether this is framed as a failure to extend his accommodation or a revocation of his accommodation, Defendant denied Plaintiff a workplace accommodation that allowed him to perform all the essential functions of his job in an exemplary manner without undue burden to Defendant.

40. Defendant mandated that Plaintiff return to his regular business hours on campus on September 7, 2021, without any accommodation.

41. Due to ongoing discussion relative to other potential accommodations that would not endanger Plaintiff's life and still be acceptable to Defendant, Defendant changed and extended Plaintiff's return date to September 13, 2021.

42. However, Defendant continued to refuse to extend or continue the accommodation which had been in place successfully for over a year-and-a-half without undue burden to Defendant.

43. Defendant rejected other accommodation proposals offered by Plaintiff and insisted that Plaintiff discharge his work duties in a manner that would require him to mostly work in-person and wear a mask for substantial periods of time while doing so, including times when he would be engaged in physical activity and emotionally agitating or stressful situations.

44. While Defendant and Plaintiff were still engaged in discussions relative to potential reasonable accommodation options, Defendant terminated Plaintiff's employment on September 15, 2021 because Plaintiff was unwilling and physically unable, due to his disability, to comply with Defendant's mandate that Plaintiff return to mostly in-person performance of his work and wear a mask while doing so.

### *Lack of Undue Hardship*

45. Generalized conclusions will not suffice to support a claim of undue hardship.

46. Instead, undue hardship must be based on an individualized assessment of current circumstances that show that a specific reasonable accommodation would cause ***significant*** difficulty or expense. *See* 29 C.F.R. §1630.15(d)

47. A determination of undue hardship must be based on several factors, including: (i) the nature and cost of the accommodation needed; (ii) the overall financial resources of the facility making the reasonable accommodation; the number of persons employed at this facility; the effect on expenses and resources of the facility; (iii) the overall financial resources, size, number of employees, and type and location of facilities of the employer; (iv) the type of operation of the employer, including the composition, structure and functions of the workforce, the geographic separateness, and the administrative or fiscal relationship of the facility involved in making the accommodation to the employer; and, (v) the impact of the accommodation on the operation of the facility. See 42 U.S.C. § 12111(10)(B); 29 C.F.R. § 1630.2(p)(2) (1997).

48. The ADA's definition of undue hardship does not include any consideration of a cost-benefit analysis." *Id*.

49. Instead, [w]hether the cost of a reasonable accommodation imposes an undue hardship ***depends on the employer's resources, not on the individual's salary, position, or status*** (*e.g.*, full-time versus part-time, salary versus hourly wage, permanent versus temporary)." )." *See* EEOC, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA*, Undue Hardship Issues (Oct. 17, 2002), Q. 45.

50. Plaintiff's existing accommodation was revoked, his proposed alternative accommodations were denied, and he was terminated solely because Defendant mandated that most, but not all, employees return to in-person work and wear a mask whenever in a public area or in the vicinity of others according to Defendant's new COVID-19 Campus Safety Policy.

51. Perceived inconvenience or "that is just not the way we want to do things around here now," neither individually nor together, constitute "undue hardship."

52. Defendant could have continued to accommodate Plaintiff in the same manner it had for over a year-and-a-half without issue or problem or undue hardship but simply chose not to, and instead imposed a one-size-fits-all policy for its perceived convenience.

*Disability Discrimination*

53. At all relevant times, Plaintiff suffered from Catecholaminergic Polymorphic Ventricular Tachycardia ("CPVT") which substantially impaired one or more major life activities and is a disability under the ADA, FEPA, CRPD, and RICRA.

54. At all relevant times, Plaintiff performed his regular duties as a Network Manager, and therefore was able to perform all the "essential" tasks required of his job, with or without reasonable accommodation.

55. The fact that Plaintiff performed his work duties with the remote work accommodation for over a year-and-a-half with sterling reviews further establishes that he could perform the "essential" tasks required of his job, with or without reasonable accommodation.

56. Accordingly, at all relevant times, Plaintiff was a qualified individual or otherwise qualified, as those terms are defined under the ADA, FEPA, CRPD, and RICRA.

57. At all relevant times, Defendant and its employees and agent, were aware of Plaintiff's disability as that term is defined and applied under the ADA, FEPA, CRPD, and RICRA.

58. At all relevant times, Defendant had a record of the Plaintiff's impairment, as that term is defined and applied under the ADA, FEPA, CRPD, and RICRA.

59. Defendant initially provided the remote work accommodation and Plaintiff performed his work to a very high standard while working with this accommodation.

60. However, Defendant subsequently revoked and refused to continue Plaintiff's remote work accommodation and instead terminated Plaintiff's employment because Plaintiff was unwilling and physically unable to comply with Defendant's demand.

61. The circumstances of Defendants' failure to allow Plaintiff to continue to work with his remote accommodation and his subsequent termination based thereon, clearly establishes a *prima facie* case of disability discrimination under applicable law, insofar as Plaintiff was in a protected class, his work performance always more than met Defendant' reasonable expectations, and he was replaced or had his duties assumed by another employee not in the protected class.

62. Defendant's revocation and refusal to continue the remote work accommodation and insistence that Plaintiff either return to more substantial in-person work and wear a mask whenever in a public area or with others or apply for other comparable employment with Defendant, all of which had the same requirements, does not constitute reasonable accommodation under applicable law.

63. Plaintiff's requested reasonable accommodation did not and would not impose an "undue hardship" on Defendant's business operations.

64. Indeed, the Plaintiff's successful and exemplary performance of all the essential functions of his job with the previously granted remote work accommodation without any issue forecloses any claim that continuing this accommodation would have impose and "undue hardship" on Defendant.

### *Failure or Refusal to Engage in a Dialogue Regarding Reasonable Accommodations*

65. Under the ADA, FEPA, CRPD, and RICRA, Defendants had an obligation to engage in a dialogue and provide reasonable accommodation for Plaintiff's disability.

66. At all relevant times, Defendant was well aware of Plaintiff's disabilities and need for reasonable accommodation, and Defendant had a duty under applicable law to inquire and engage in a dialogue relative to the necessity and nature of any reasonable accommodation that Plaintiff may require.

67. Indeed, Defendants knew that Plaintiff required reasonable accommodations, relating to minimizing mask-wearing and had been granting Plaintiff's remote-work accommodation to allow for this for over a year-and-a-half.

68. Nevertheless, without engaging in a dialogue, Defendant unilaterally revoked and refused to continue Plaintiff's remote work accommodation and instead imposed new work requirements that did not comply with the necessity and purpose of the existing accommodation.

69. In response, Plaintiff proposed an alternative accommodation and while Defendant and Plaintiff were still discussing potential alternative accommodations that would meet the needs of both parties, Defendant elected to terminate Plaintiff's employment instead of continuing to engage in the reasonable accommodation dialogue that was ongoing and mandated by applicable law.

70. Defendant's failure or refusal to engage in a full and meaningful dialogue relative to the necessity and nature of any reasonable accommodation Plaintiff required, in and of itself, qualifies as prohibited disability discrimination.

*Retaliation*

71. When Plaintiff requested reasonable accommodation, proposed alternative reasonable accommodation, and was engaged in a dialogue with Defendant regarding reasonable accommodations, he was engaged in protected activity.

72. Defendants retaliated against Plaintiff by terminating Plaintiff's employment after he proposed alternative accommodations that would address the needs of his disability while not imposing an undue hardship to Defendant and while the parties were still engaged in a dialogue with Defendant relative to this proposal and accommodations more generally.

*Pretext and Discriminatory Intent*

73. Defendant's intent to discriminate against Plaintiff on account of his disabilities is further established, in part, by conduct evidencing that Defendant's reasons for treating Plaintiff adversely were pretextual and that discrimination motivated its decision, including: a) Plaintiff's long history of good performance, b) asserting after the fact justifications for adverse conduct, c) asserting false justifications for adverse conduct, d) treating Plaintiff differently than other similarly situated employees; e) asserting

implausible, inconsistent, and contradictory justifications for adverse treatment of Plaintiff; f) the absence of credible justification for his adverse treatment; and e) the temporal proximity of Plaintiff engaging in protected conduct to his adverse treatment.

74. Defendant contends that the reason for the Plaintiff's termination was his failure to comply with Defendant's COVID-19 Campus Safety Policy.

75. However, the accommodation Plaintiff sought, and had previously been granted, was fully compliant with that policy and had been in effect during the entirety of the pandemic up until Defendant's termination of Plaintiff's employment.

76. Defendant's refusal to continue a successful accommodation without any change in job duties or other material change in circumstances creates an inference of discriminatory intent.

77. To the extent that Defendant now advances different reasons for Plaintiff's termination, any such post hoc justifications are a patently false pretext for its discriminatory actions.

78. Furthermore, Plaintiff was terminated only because Plaintiff required an accommodation to the Defendant's one-size-fits-all, campus wide mask mandate to which Defendant was unwilling to permit any accommodation that did not involve in-person work and a mask in public at all times, despite the threat to Plaintiff's health and safety and lack of any undue hardship.

79. In light of his job performance and history, it is simply not credible that Defendant would have taken adverse action against Plaintiff for any reason other than those related to his disabilities and/or request for reasonable accommodation and/or retaliation for requesting and engaging in a dialogue regarding reasonable accommodation.

80. Adverse employment action based *even in part* on account of disabilities constitutes prohibited discrimination.

*Motivation and Harm*

81. Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to those described herein, are in violation of the ADA, FEPA, CRPD, and the RICRA and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

82. As a proximate result of Defendants' wrongful and/or unlawful discriminatory acts and/or omissions, including, but not limited to those described herein, Plaintiff suffered, is now suffering, and will continue to suffer emotional and economic injury, including, but not limited to, pecuniary losses, loss of income, loss of benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to Plaintiff's professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

## VI.  Causes of Action

83. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 82 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

### Count One
**Americans with Disabilities Act**
**42 U.S.C. § 12101,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation*

84. Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated and/or retaliated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the ADA, and thereby deprived him of rights secured under the ADA, causing him to suffer damages as aforesaid.

**Count Two**
**Rhode Island Fair Employment Practices Act**
**R.I. Gen. Laws § 28-5-1,** *et seq.*

85. Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated and/or retaliated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the FEPA, and thereby deprived him of rights secured under the FEPA, causing him to suffer damages as aforesaid.

**Count Three**
**Civil Rights of People with Disabilities**
**R.I. Gen. Laws § 42-87-1,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation*

86. Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated and/or retaliated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the CRPD, and thereby deprived him of rights secured under the CRPD, causing him to suffer damages as aforesaid.

**Count Four**
**Rhode Island Civil Rights Act of 1990**
**R.I. Gen. Laws § 42-112-1,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation*

87. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of Plaintiff's disability, and thereby wrongfully interfered with Plaintiff's contract of employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

## VII.     Prayers for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the ADA, FEPA, CRPD, and/or the RICRA.

2.  An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3.  An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay or reinstatement, other compensation and/or benefits, and to make Plaintiff whole for all earnings and benefits Plaintiff would have received but for Defendants' unlawful conduct.

4.  An award of compensatory damages.

5.  An award of punitive damages.

6.  An award of prejudgment interest, reasonable attorneys' fees, and costs.

7.  Such other and further relief as this Court deems just and proper.

## VIII. Demand for a Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esq. as trial counsel.

Plaintiff,
By his attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

Date: September 10, 2024

/s/ **Richard A. Sinapi**
/s/ **Chloe A. Davis**
**Richard A. Sinapi, Esq. (#2977)**
**Chloe A. Davis, Esq. (#9334)**
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690; FAX: (401) 739-9040
Emails: ras@sinapilaw.com; cad@sinapilaw.com